IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| INTERNATIONAL FIDELITY INSURANCE COMPANY, a New Jersey corporation,<br><br>Plaintiff,<br>v.<br><br>LA PORTE CONSTRUCTION, INC., *et al.*,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:16-cv-00032-JNP-EJF<br>District Judge Jill N. Parrish |

Before the Court is Plaintiff International Fidelity Insurance Company's ("IFIC") Motion for Partial Summary Judgment (the "Motion") (ECF No. 95). IFIC moves the court for summary judgment against defendants Benjamin Logue ("Mr. Logue"), Lisa Marie Logue ("Mrs. Logue"), La Porte Construction, Inc. ("La Porte Construction"), and La Porte Management, Inc. ("La Porte Management") (collectively "Defendants") on its First Claim for Relief for Breach of Contract. Only Mrs. Logue opposed IFIC's Motion. *See* Affidavit/Declaration in Opposition to Motion (the "Opposition"), ECF No. 97.

The court heard oral argument on the motion on January 11, 2019. At the hearing, defendants Mr. Logue, La Porte Construction, and La Porte Management represented that they intended to stipulate to an entry of judgment against them. On February 4, 2019, IFIC filed a Verified Statement in Support of Judgment by Confession ("Verified Statement") (ECF No. 127) signed by Mr. Logue on behalf of Mr. Logue, La Porte Construction, and La Porte Management ("Confessing Defendants"). Pursuant to the Verified Statement, the court hereby **GRANTS** the Motion for Partial Summary Judgment as to the Confessing Defendants. The court now evaluates the Motion on the merits as to Mrs. Logue.

**BACKGROUND**

This case arises out of the development and construction of a high-density mixed-use residential and commercial project in downtown Salt Lake City known as the Plaza at State Street (the "Plaza"). Defendant Tannach Properties, record owners of certain properties, hired La Porte Construction as the general contractor for the Plaza. Mr. Logue is the president and principal of La Porte Construction. Tannach and La Porte entered into three separate construction contracts regarding the Plaza. Each contract required La Porte to acquire construction bonds to guarantee the project.

La Porte applied to IFIC to furnish both contractor performance and payment bonds for the Plaza. IFIC agreed to execute performance and payment bonds for each project (collectively the "Bonds," separately "Performance Bonds" or "Payment Bonds"). As a condition of procuring the Bonds, IFIC presented La Porte with an "Indemnity Agreement." The Indemnity Agreement lists International Fidelity Insurance Company and/or Allegheny Casualty Company as "Surety," La Porte Construction as "Contractor," and the remaining 63 named defendants as "Indemnitors." On March 30, 2012, Mr. Logue and his wife, Mrs. Logue, executed the Indemnity Agreement in their individual capacities. Mr. Logue also executed the Indemnity Agreement on behalf of the other Indemnitors, purportedly as President of La Porte Construction and La Porte Management, and as Managing Member of the other 60 Indemnitors. Accompanying each signature is an acknowledgment by a notary public that Mr. Logue signed on behalf of each of the Indemnitors. But Mr. Logue was not the managing member of the Indemnitors, nor had he been authorized to

represent them. On March 3, 2017, the court dismissed 16 indemnitors due to Mr. Logue's lack of authority, apparent or actual, to bind them.[1]

The Indemnity Agreement required all the Indemnitors to indemnify IFIC "against all losses, costs, expenses, and exposure" related to the Bonds and the construction of the Plaza Development by La Porte. The Indemnity Agreement also contained the following provision under the heading "Representations":

> The undersigned represent to [IFIC] that they have carefully read the entire [Indemnity] Agreement and that there are no other agreements or understandings which in any way lessen or modify the obligations set forth herein. The undersigned further warrant and represent to [Fidelity] that all necessary action has been taken by them to authorize the execution and delivery of this [Indemnity] Agreement.

Along with the Indemnity Agreement, IFIC also required Mr. Logue to sign Resolutions Authorizing Execution of Indemnity Agreement (the "Resolutions"). The Resolutions, which were prepared by IFIC, each contained the following provision:

> At a Special meeting of the Members of the [e.g., Amberley Properties II, LLC] . . . duly called and held on the 30 day of March, 2012 a quorum being present, the following Preamble and Resolution were adopted: WHEREAS this LLC has a financial material and beneficial interest in transactions in which LaPorte Contruction, Inc. [is involved] . . . RESOLVED, that the Managing Member(s) authorized to execute documents on behalf of the LLC, be and they are hereby authorized and empowered to execute any indemnity agreement or agreements required by [Fidelity] . . . RESOLVED FURTHER, that the Member be and they are hereby authorized and empowered to execute such indemnity agreement or

---

[1] The defendants that were dismissed pursuant to the court's March 2, 2017 Memorandum Decision and Order (ECF No. 69) are: Amberley Properties I, LLC; Amberley Properties II, LLC; Andalucia Properties, L.L.C.; Barcelona Properties, LLC; Bracken Properties, L.L.C.; Dundee Properties, L.L.C.; Edinburgh Properties, L.L.C.; Farquhar Properties, L.L.C.; Glenfinnan Properties, L.L.C.; Inverness Properties, L.L.C.; Jameson Commercial Properties, L.L.C.; Jameson Properties, L.L.C.; Kilmarnock Properties, L.L.C.; McGregor Properties, L.L.C.; Oban Properties, L.L.C.; Portree Properties, L.L.C.; and Raasay Properties, L.L.C. IFIC voluntarily dismissed Cardiff Properties, L.L.C. on April 5, 2017.

> agreements and to any and all amendments to said indemnity agreement or agreements and to any other or further agreements.

The Resolutions concluded with a provision intended to identify by name the "Managing Members" authorized to execute the Indemnity Agreement, but no names or entities were listed. Each of the Resolutions bears the sole signature of "Benjamin Logue, Managing Member."

After the execution of the agreements, the project got underway. But the project faced severe hardships. As a result, work on the Plaza was suspended indefinitely. In June 2015, Citibank, one of the obligees under the Bonds, made demand on IFIC under the Performance Bonds. Citibank filed suit in the United States District Court, District of Utah. The suit was dismissed. Citibank refiled in the Third District Court for Salt Lake County, State of Utah. Citibank also filed an action to judicially foreclose Citibank's trust deed on the property (the "Foreclosure Action"). Meanwhile, La Porte Construction's subcontractors and suppliers made claims on the Payment Bonds. These actions were all brought in the Third District Court for Salt Lake County, Utah. IFIC has paid damages on all of the claims except for Citibank's claim under the Performance Bonds and one action pending under the Payment Bonds.

IFIC brought this suit against La Porte Construction and the Indemnitors on January 12, 2016. In 2017, the court dismissed the seventeen above-named indemnitors and in October of 2017 entered final judgment in their favor. IFIC now moves for partial summary judgment against Mr. Logue, Mrs. Logue, La Porte Construction, and La Porte Management ("Defendants") seeking damages for breach of contract and specific performance. The Confessing Defendants did not oppose the Motion and signed the Confession of Judgment on February 4, 2019. Thus, of the four Defendants, only Mrs. Logue opposes the motion.

## ANALYSIS

### A. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of [Fed. R. Civ. P. 56] mandates the entry of summary judgment . . . upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and the nonmoving party must "go beyond the pleadings and by [their] own affidavits . . . depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 323–24 (internal citation and quotation marks removed).

When considering a motion for summary judgment, the court must examine all of the evidence in the light most favorable to the nonmoving party. *Jones v. Unisys Corp.,* 54 F.3d 624, 628 (10th Cir. 1995). This requires that all reasonable inferences be drawn in favor of the nonmoving party. *Sports Unltd., Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 999 (10th Cir. 2002). A dispute of fact is genuine only if "a reasonable [trier of fact] could find in favor of the nonmoving party on the issue." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712 (10th Cir. 2014). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,' summary judgment in favor of the moving party is proper." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

IFIC has moved for summary judgment on its breach of contract claim against Defendants seeking damages in the amount of $1,320,176.66[2] for breach of contract and a decree of specific performance requiring the Defendants to post money or collateral in the amount of $16,300,00.00 due to the parties' alleged breach of the Indemnity Agreement. Confessing Defendants admit that the amount of damages and the amount sought as collateral are correct. Mrs. Logue does not contest the essential facts on which IFIC relies, or the amount of damages sought, but rather contests her liability under the contract due to her lack of understanding, lack of legal representation, and her signing under duress. The court will first address whether the contract was breached and then turn to Mrs. Logue's defenses.

## B. BREACH OF CONTRACT

IFIC alleges that the Defendants should be held liable for breaching the Indemnity Agreement. Under Utah law,[3] "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 230–31 (Utah 2014) (internal citation omitted).

---

[2] In IFIC's initial Motion, IFIC sought $1,100,690.95 in damages. At the hearing, counsel represented that this amount should be amended to reflect the costs and expenses incurred in the intervening months. In the Verified Statement, IFIC provides an updated amount of $1,320,176.66.

[3] The parties have not discussed which state's law should apply to the interpretation of the Indemnity Agreement, nor does the Indemnity Agreement include a choice of law provision. A federal district court, sitting in diversity, applies Utah choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Utah follows the Restatement (Second) of Conflict of Laws and applies the law of the most significant relationship to contract cases. *Records v. Briggs*, 887 P.2d 864, 867-68 (Utah Ct. App. 1994). Under the most significant relationship analysis, the court looks to "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of business of the parties." *Id.* at 869 (quoting Restatement (Second) of Conflict of Laws § 188(2)). All 64 original defendants are domiciled in Utah, the subject matter of the contract is in Utah, and the place of performance is in Utah. The place of contracting also appears to be Utah. Accordingly, the court will apply Utah law.

1. **Contract**

In this case, the Indemnity Agreement is a contract, enforceable under Utah law, against those persons who are a party to the agreement. "A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." Restatement (Second) of Contracts § 1 (1981). A contract is formed when there is a "manifestation of mutual asset" between "at least two parties" creating a bargained for "exchange" and "consideration." *Id.* §§ 9, 17. "A condition precedent to the enforcement of any contract is that there be a meeting of the minds of the parties, which must be spelled out, either expressly or impliedly, with sufficient definiteness to be enforced." *Valcarce v. Bitters*, 362 P.2d 427, 428 (Utah 1961). In this case, there was a meeting of the minds and a bargained for exchange. IFIC entered into the Indemnity Agreement with the Defendants in exchange for IFIC becoming surety in the underlying surety transactions.[4] Indemnity Agreements are often used to guarantee the rights of the surety against the obligor. "[I]n cases of suretyship and guaranty, there is, if not an express contract, as in the instant case, an implied contract that the principal should indemnify

---

[4] The underlying surety agreements are the Bonds. Under Utah law, which follows the Restatement (Third) of Suretyship and Guaranty, s*ee PC Riverview, LLC v. Xiao-Yan Cao*, 424 P.3d 162, 167 (Utah 2017), a suretyship exists when:

> (a) pursuant to contract (the "secondary obligation"), an obligee has recourse against a person (the "secondary obligor") or that person's property with respect to the obligation (the "underlying obligation") of another person (the "principal obligor") to that obligee; and
> (b) to the extent that the underlying obligation or the secondary obligation is performed the obligee is not entitled to performance of the other obligation; and
> (c) as between the principal obligor and the secondary obligor, it is the principal obligor who ought to perform the underlying obligation or bear the cost of performance.

Restatement (Third) of Suretyship & Guaranty § 1 (1996). In the underlying suretyship agreements, Tannach and Citibank, the obligees, have recourse against IFIC as the secondary obligor or "surety" with respect to the obligation of La Porte Construction (the "principal obligor").

the surety if the latter is compelled to pay the creditor." *Beaver Cty. v. Home Indem. Co.*, 88 Utah 1, 52 P.2d 435, 450 (1935). The Indemnity Agreement is enforceable against the parties that properly executed the agreement. The Confessing Defendants admit that the Indemnity Agreement is valid and enforceable. Verified Statement at ¶ 2.

2. **Performance**

IFIC performed its obligation under the Agreement. IFIC is obligated by the Indemnity Agreement to execute or procure bonds for the construction project.[5] IFIC procured three Performance and Payment Bonds dated April 5, 2012. The Bonds are:[6]

| Payment Bond No. | Date | Bond Amount |
|---|---|---|
| SAIFSU0539632 | April 5, 2012 | $16,916.641.00 |
| SAIFSU0539633 | April 5, 2012 | $1,508,636.00 |
| SAIFSU0539634 | April 5, 2012 | $426,983.00 |

| Performance Bond No. | Date | Bond Amount |
|---|---|---|
| SAIFSU0539632 | April 5, 2012 | $16,916,641.00 |
| SAIFSU0539633 | April 5, 2012 | $1,508.636.00 |
| SAIFSU0539634 | April 5, 2012 | $426,983.00 |

3. **Breach**

The Defendants have breached the Indemnity Agreement. "To establish a breach of contract claim, a party must identify a contracted duty that the other party has breached." *Tooele Assocs. Ltd. P'ship v. Tooele City*, 251 P.3d 835, 835–36 (Utah Ct. App. 2011) (citing *ELM, Inc. v. M.T. Enters., Inc.*, 968 P.2d 861, 863–64 (Utah Ct. App. 1998), *cert. denied*, 982 P.2d 89 (Utah

---

[5] "WHEREAS, . . . The Surety has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, said Bonds on behalf of the Contractor or the Surety may have already issued such Bonds in reliance upon this Agreement . . . ." Indemnity Agreement at 3.

[6] See Verified Statement at ¶ 3. Confessing Defendants admit that IFIC performed its obligations.

1999)). The Contractor and Indemnitors' obligations under the Indemnity Agreement include the obligations to:

1) Exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (. . . ) and from and against any and all such losses and/or expenses which [IFIC has] sustain[ed] and incur[ed]: (1) By reason of having executed . . . the Bonds, (2) By reason of the failure of [Logues et al.] to perform or comply with the covenants and conditions of [the Indemnity] agreement or (3) In enforcing any of the covenants and conditions of the [Indemnity] Agreement;
2) Deposit with the Surety on demand an amount of money or other collateral security . . . , as soon as liability exists or is asserted against the Surety. . . ;
3) Upon the written request of the Surety, promptly procure the full and complete discharge of the Surety from any Bonds specified in such request and all potential liability by reason of such Bonds; [and]
4) If such full and complete discharge is unattainable, [and] if requested by the Surety, within five business days, place the Surety in funds that are immediately available and sufficient to meet all of the Surety's liabilities that are in force prior to the date of the Surety's demand.

IFIC alleges that the Defendants have failed to perform any of their obligations under the contract.

In 2014 the Plaza project began to struggle and Citibank, an obligee under the Bonds, provided notice to IFIC that it was considering a declaration of default. After performing an investigation of Citibank's claims, in February 2015, IFIC demanded that the Indemnitors "procure IFIC's full and complete discharge of the Bonds" or "place with IFIC a total of Five Million Dollars . . . ." Motion at ¶ 14. The Indemnitors failed to comply, breaching their obligations under the Indemnity Agreement.

On June 17, 2015, Citibank delivered a "Notice of Default and Termination," terminating LaPorte Construction as general contractor on the Plaza. On June 30, 2015, Citibank made demand on IFIC to perform and complete the Plaza. But construction did not continue. Subsequently,

Citibank filed suit against IFIC on the Performance Bonds in the Third District Court for Salt Lake County, State of Utah ("Citibank Action") (Case No. 160902663). Citbank also filed an action to judicially foreclose its trust deed on the property ("Foreclosure Action") (Case No. 160907463). Following Citibank's suit, numerous subcontractors and suppliers have asserted claims against Citibank in the Third District Court for Salt Lake County, Utah on the Payment Bonds. Of the contractor claims, one action, brought by Bragg Crane Service ("the Brag Action") (Case No. 160904355), is still pending.

IFIC alleges that the Defendants breached the Agreement by failing to procure IFIC's discharge from the Bonds, failing to place money in trust, and in failing to exonerate IFIC from the claims brought under the Bonds. Confessing Defendants admit they have breached the contract and the court finds that the Defendants, including Mrs. Logue, have breached the Indemnity Agreement as alleged.

4. **Damages[7]**

As of January 22, 2019, IFIC has paid $389,247.10 in claims related to the Payment Bonds. By the terms of the Indemnity Agreement, the Indemnitors are required to exonerate and indemnify IFIC for these damages. IFIC also seeks the attorneys' fees and costs paid and incurred. As of January 22, 2019, IFIC has paid and incurred attorneys' fees and costs in the amount of $1,230,929.56. IFIC seeks a judgment in the amount of $1,320,176.66 for total breach of contract damages. The court finds that these damages are correctly calculated.

---

[7] IFIC provides an updated damage calculation as of January 22, 2019 in the Verified Statement at ¶ 9.

## C. SPECIFIC PERFORMANCE

In addition to seeking recovery for the costs and expenses that IFIC has already paid, IFIC seeks specific performance of certain provisions of the Indemnity Agreement to cover its additional potential liability of $16,300,000.00 under the Bonds.[8] The potential liability stems from the pending lawsuits under the Bonds including the Citibank Action under the Performance Bonds and the Bragg Action under the Payment Bonds. First, IFIC alleges that its potential liability for the Citibank Action may exceed the total sum of the Performance Bonds, which is $18,852,260.[9] Second, in the Bragg Action, the court awarded Bragg Crane a judgment of $300,241.61 ($147,186.95 plus attorney's fees, costs, and interest) against IFIC. Verified Statement at ¶ 8.b. IFIC contests its liability for the judgment amounts in the above-mentioned actions. Because IFIC contests the pending actions, the final damages are uncertain and incalculable at this time. Therefore, IFIC asks for specific performance of the Indemnity Agreement to protect IFIC against liability in these pending actions. To merit specific performance under Utah law, the contract must be certain[10] and there must be no adequate remedy available at law.[11]

---

[8] Confessing Defendants "acknowledge and agree that IFIC deems $16,300,00 to be the amount of money or collateral sufficient to protect IFIC from loss."

[9] IFIC calculates its potential liability under the Citibank Action as the amount awarded Citibank in the Foreclosure Action, which was a judgment of $12,144.190.69, plus post judgment interest at the contract rate of 7.75% per annum starting on June 22, 2018 ($941,174.78 for year one), and estimated attorney fees and costs of $2,000,000.00. *See* Motion at Exhibit 6 (Decl. of Frank J. Tanzola); and Verified Statement at ¶ 8.a.

[10] "[T]he contract must be free from doubt, vagueness, and ambiguity . . . . It must be sufficiently certain and definite in its terms to leave no reasonable doubt as to what the parties intended, and no reasonable doubt of the specific thing equity is called upon to have performed . . . . " *Tooele Assocs. Ltd. P'ship v. Tooele City,* 251 P.3d 835, 835–36 (Utah Ct. App. 2011) (quoting *Pitcher v. Lauritzen,* 423 P.2d 491, 493 (Utah 1967)).

[11] *Last Chance Ranch Co. v. Erickson*, 25 P.2d 952, 962 (Utah 1933).

1. **The Indemnity Agreement is Certain**

The Indemnity Agreement provisions at issue require the Indemnitors to 1) "Deposit with the Surety on demand an amount of money or other collateral security . . . , as soon as liability exists or is asserted against the Surety," and 2) when IFIC demands complete discharge from the bonds but "such full and complete discharge is unattainable, [and] if requested by the Surety . . . place the Surety in funds [*sic*] that are immediately available and sufficient to meet all of the Surety's liabilities that are in force prior to the date of the Surety's demand." These provisions are certain and undisputed. In their Answer to the Complaint, Defendants admitted they have not complied with these provisions and Confessing Defendants admit that IFIC is entitled to collateral security under the agreement.

2. **No Adequate Remedy at Law**

IFIC alleges that specific performance is the appropriate remedy for the outstanding liabilities because, until the judgments are final, the damages from those actions are uncertain. Although, the damages will be certain when the lawsuits are fully adjudicated, IFIC alleges that the Indemnity Agreement requires that the Defendants place $16,300,000 in trust.[12]

In this case, under the clear terms of the Indemnity Agreement, specific performance is the most appropriate remedy. IFIC, in agreeing to secure the Performance and Payment Bonds, bargained for immediate security in case of suit rather than damages after the fact. "Sureties are ordinarily entitled to specific performance of collateral security clauses. If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically

---

[12] This amount includes the amount "required to discharge, or exonerate, IFIC from (a) potential liability and losses on the Bonds and (b) expenses, including attorneys' fees and consultants' fees . . . ." IFIC alleges that its potential liability on the Citibank Action is $15,085,365.46 and $409,982.09 on the Bragg Action. IFIC estimates that is expenses to date are $800,000.00.

enforced." *Travelers Cas. & Sur. Co. of Am. v. CraCar Constr. Co.*, 2018 WL 3873678, at *4 (D. Utah 2018) (internal quotation marks removed) (quoting *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984)). "Although [the Surety's] past Losses can be remedied with contract damages, . . . [its] additional and substantial anticipated Losses cannot." *Id.* Thus, the court grants summary judgment in favor of IFIC on the claim for specific performance.

### D. MRS. LOGUE

Of the four Defendants, only Mrs. Logue opposed the motion for summary judgment. Acting *pro se*, Mrs. Logue argues that she should not be held liable under the Bonds because she did not read the contract nor would she have understood the contract had she read it and because she signed the contract under duress and without legal representation.

#### 1. Not Reading or Understanding

Under Utah law, a party's failure to read and/or understand a contract is not a defense against its enforcement. So long as the person signing a contract has "the capacity and an opportunity to read a contract" and "is not misled as to its contents," he or she "cannot avoid the contract on the ground of mistake if he [or she] signs it without reading it." *John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1208 (Utah 1987) (quoting *Garff Realty Co. v. Better Bldgs., Inc.*, 234 P.2d 842, 844 (Utah 1951)). And "each party has the burden to read and understand the terms of a contract before he or she affixes his or her signature to it. A party may not sign a contract and thereafter assert ignorance or failure to read the contract as a defense." *Id*. Mrs. Logue had the capacity and opportunity to read the contract and she signed it, attesting that she had read it. Mrs. Logue cannot avoid liability on these grounds.

#### 2. Duress

Mrs. Logue testifies that she was forced to sign the contract under duress. To support her claim, Mrs. Logue alleges that she "had no intention of signing the bonds," she "did not have an

attorney representing" her, and that she "received a telephone call shortly before the project at issue was to close." Mrs. Logue testifies she "was told that if [she] did not sign the bonds, then the project would not close." Mrs. Logue alleges that she and her husband would have lost hundreds of thousands of dollars and thus she "had no choice but to sign the bonds." For these reasons, Mrs. Logue alleges she signed the Bonds under duress and the Bonds should not be enforced against her.

To establish duress under Utah law, "[f]irst, there must be some improper threat made by the defendant. Second, that threat must leave the victim/plaintiff with no reasonable alternative but to consent to the contract." *Boud v. SDNCO, Inc.*, 54 P.3d 1131, 1137 (Utah 2002) (citing Restatement (Second) of Contracts § 175(1) (1979)).[13] The burden is on Mrs. Logue to establish duress by clear and convincing evidence. *In re Adoption of B.T.D.*, 68 P.3d 1021, 1026–27 (Utah Ct. App. 2003) (citing *Reliable Furniture Co. v. American Home Assurance Co.,* 466 P.2d 368, 370 (Utah 1970)) ("Utah case law requires clear and convincing evidence to prove duress, undue influence, fraud, and mistake."). A contract is voidable due to duress by the victim "[i]f ... assent is induced [(1)] by an improper threat [(2)] by the other party [(3)] that leaves the victim no reasonable alternative." *Id.* at 1026 (quoting Restatement (Second) of Contracts § 175 (1981)).

    **a. Improper Threat**

"A threat is improper if the resulting exchange is not on fair terms" and:

> (a) the threatened act would harm the recipient and would not significantly benefit the party making the threat,
> (b) the effectiveness of the threat in inducing the manifestation of assent is significantly increased by prior unfair dealing by the party making the threat, or

---

[13] Utah Law follows the Restatement (Second) of Contracts § 175. *See Boud v. SDNCO, Inc.*, 54 P.3d 1131, 1137 (Utah 2002) ("[D]uress exists when 'a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative.'") (quoting *Andreini v. Hultgren,* 860 P.2d 916, 921 (Utah 1993)).

14

> (c) what is threatened is otherwise a use of power for illegitimate ends.

Restatement (Second) of Contracts § 176 (1981). A party's assent is induced by an improper threat if the threat "substantially contributes to his [or her] decision to manifest his [or her] assent." *Id.* § 175 (1981), cmt c. In considering whether there was duress, "[a]ll attendant circumstances must be considered, including such matters as the age, background and relationship of the parties." *Id.* Other factors include "the availability of disinterested advice and the length of time that elapses between the making of the threat and the assent." *Id.*

Based on Mrs. Logue's testimony, she was subjected to an improper threat. First, the Indemnity Agreement is unfair to Mrs. Logue because it entitles IFIC to hold Mrs. Logue, a self-proclaimed stay-at-home house wife, jointly and severally liable for the total potential penal amount of the Bonds on a sixteen-million-dollar construction project. Second, Mrs. Logue was pressured into the deal. The timing of the situation was unfair as she was notified about the deal immediately before it was scheduled to close, giving her little time to try and understand the contract. Finally, she lacked counsel throughout the process.

In order to determine whether lack of counsel constitutes duress, the court must look to the circumstances of the parties to determine whether there was a great disparity in bargaining power. In *Boyd v. U.S. Bank Nat. Ass'n*, No. 06-2115-KGS, 2007 WL 2822518, at *19 (D. Kan. 2007), the court found that the disparity in bargaining power between "a commercial party and an individual" was not "gross" because the individual who went unrepresented had a business degree and worked in finance. But in *Too Tall Inc. v. Sara Lee Bakery Grp., Inc.*, No. CV 08-191 JP/WDS, 2009 WL 10665806, at *4 (D.N.M. 2009), the court found that an individual without "business education or significant business experience," who "was not represented by counsel," was in a position of grossly unequal bargaining power with a corporation. Mrs. Logue's case is more

15

analogous to *Too Tall Inc*. Mrs. Logue is a self-proclaimed "house wife and stay at home mother." She has no degree or training in finance or engineering. Nor was she actually involved in the construction project. The court therefore finds that she was subjected to an improper threat that induced her assent to sign the Indemnity Agreement.

### b. No Reasonable Alternative

Although Mrs. Logue was subjected to an improper threat, she was not without reasonable alternatives to avoid the contract and thus she was not subject to duress. "A threat, even if improper, does not amount to duress if the victim has a reasonable alternative to succumbing and fails to take advantage of it." Restatement (Second) of Contracts § 175 (1981), cmt b. In this case, Mrs. Logue alleges that her only option was to sign the contracts or her livelihood would be threatened. Specifically, she alleges that she and her husband would lose hundreds of thousands of dollars if the project did not move forward. Although financial loss is a significant pressure, "the mere loss of a potential bargain does not leave a plaintiff with 'no reasonable alternative.'" *Boud v. SDNCO, Inc*., 54 P.3d 1131, 1138 (Utah 2002) (citing *Heglar Ranch, Inc. v. Stillman,* 619 P.2d 1390 (Utah 1980)).[14] Because Mrs. Logue had reasonable alternatives, specifically, to refuse to sign the Indemnity Agreement, she was not subject to duress.

---

[14] "To label as 'duress' such incentive to complete the transaction would have the effect of permitting any party to avoid a contractual obligation on the ground that performance was agreed to only because, in the absence of such a promise, the party would be denied the benefit of a bargain. Such a defense is entirely foreign to the established law of contracts." *Heglar Ranch, Inc. v. Stillman,* 619 P.2d 1390, 1392 (Utah 1980).

**ORDER**

The court **HEREBY GRANTS SUMMARY JUDGMENT** for International Fidelity Insurance Company against Benjamin Logue, Lisa Marie Swasey Logue, La Porte Construction, and La Porte Management ("Defendants") on IFIC's First Claim for Relief for Breach of Contract. Based upon the matters set forth in the Motion for Partial Summary Judgment, the arguments of counsel, and the Verified Statement, the Court rules, adjudges, and decrees as follows:

1. Judgment is hereby entered in favor of International Fidelity Insurance Company ("IFIC") and against Defendants, jointly and severally, in the amount of $1,320,176.66, together with post-judgment interest thereon pursuant to 28 U.S.C. § 1961 (the "Judgment Amount").

2. The Judgment Amount shall be augmented by the amount of additional losses and expenses IFIC incurs after the date of this Judgment by reason of having executed the Bonds and in enforcing or collecting on this Judgment. The Judgment Amount shall be reduced by amounts, if any, paid to IFIC by Defendants or others or obtained by IFIC from enforcing this Judgment; but amounts obtained by IFIC from enforcing the Lien described in paragraph 3 of this Judgment shall not reduce the Judgment Amount. The amount of such additional losses and expenses as well as the amounts, if any, obtained by IFIC from enforcing this Judgment shall be established by the declaration of an officer of IFIC filed with the Court.

3. IFIC is hereby granted a lien ("Lien") on all real and personal property of Defendants, or any of them, of whatever kind or nature and wherever located, to the extent of $16,300,000.00 in value of said real and personal property ("Lien Amount"). The Lien Amount shall be increased if it appears, from facts established by the declaration of an officer of IFIC filed

with the Court, that IFIC's losses and expenses on the Bonds will exceed $16,300,000. The Lien Amount shall be reduced by any amounts augmenting the Judgment Amount.

4. IFIC has the following rights with regard to any collateral security provided by Defendants or any of them, the Lien, and the real and personal property subject to the Lien: (a) to use said collateral security, the Lien, and said real and personal property in payment or settlement of any liability, loss, or expense incurred by IFIC after the date of this Judgment by reason of having executed the Bonds or in enforcing this Judgment; (b) IFIC shall have no obligation to invest or provide a return on any such collateral or on the value of any such real or personal property; (c) to sell or realize upon any such collateral or real or personal property at public or private sale, with or without notice to Defendants, or by any other method permitted or applicable by law; (d) to charge for any disbursements made by IFIC in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity, or expediency existed; (e) the vouchers or other evidence of such disbursements or payments made by IFIC, including the declaration of an officer of IFIC, shall be prima facie evidence of the fact and amount of the liability of IFIC and of IFIC's good faith in making the disbursements or payments; and (f) "good faith" as used in this paragraph shall mean honesty in fact and the absence of willful misfeasance or malfeasance, and neither negligence nor gross negligence shall be deemed the absence of good faith.

5. IFIC shall release the Lien only on the condition that IFIC has been released from all liability on the Bonds and reimbursed for all losses and expenses it sustains or incurs by reason of executing the Bonds and in enforcing or collecting on this Judgment. The fact that such condition has been satisfied shall be established by the declaration of an officer of IFIC filed with the Court.

6. IFIC is hereby granted all rights necessary or appropriate to receive the benefits of this Judgment, including the rights to record this Judgment, file a UCC-1 financing statement to perfect the Lien, and take any other action necessary to perfect the Lien.

Dated February 12, 2019.

BY THE COURT:

_____
The Honorable Jill N. Parrish
United States District Court Judge